**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>Abass Y Bamba,<br><br>Debtor. | Case No. 24-11589 MER<br><br>Chapter 13 |

**ORDER GRANTING MOTION TO DISMISS**

Delay in the bankruptcy process is fundamentally inconsistent with the goal of an efficient bankruptcy system. The within case is a classic example of this premise.

This matter comes before the Court on the Motion to Dismiss Pursuant to 11 U.S.C. § 1307(c)(1) and (c)(3) ("**Motion to Dismiss**") filed by creditor Dominion Financial Services, LLC ("**Dominion**") and the response filed by the Debtor, Abass Bamba ("**Bamba**").[1]

**BACKGROUND**

This bankruptcy case was filed by Bamba over eighteen months ago on April 3, 2024. Since that date, Bamba has made no real progress towards confirming a Chapter 13 plan. Instead, his efforts have been almost solely focused on avoiding liability for a secured loan he entered with Dominion in 2019 for the construction of a single-family home.[2] Bamba filed this case (at the time with counsel) to stop a foreclosure proceeding initiated by Dominion. His initial plan proposed selling his residence to pay Dominion's claim. Three months into the case, Bamba fired his counsel and filed a pro se objection disputing the amount of Dominion's claim and the legitimacy of its lien. After an evidentiary hearing, this Court overruled Bamba's claim objection and determined that Dominion has an allowed secured claim for $745,332.[3] Despite this ruling, Bamba has continued to contest Dominion's claim at every turn. He appealed the Court's order allowing Dominion's claim. He filed three adversary proceedings against Dominion and multiple motions, objections, and notices contesting the validity of Dominion's claim, on similar, if not identical, theories as litigated in his claim objection. He has filed numerous motions requesting that all or a portion of his Chapter 13 case be stayed while he appeals Dominion's allowed claim. Although the Court denied all those

---

[1] ECF No. 128, 133.

[2] ECF No. 117, Order Overruling Debtor's Claim Objection.

[3] *Id*.

requests, Bamba refused to submit a plan that proposed any treatment for Dominion's claim and declined the opportunity to file a further amended plan to address multiple confirmation objections from numerous other creditors and the Chapter 13 Trustee. Bamba also refused to participate in the evidentiary hearing on plan confirmation and on Dominion's Motion to Dismiss. As discussed more fully below, these actions lead the Court to conclude that dismissal of this case is appropriate.

## DISCUSSION

Dominion's Motion to Dismiss seeks dismissal of Bamba's case pursuant to 11 U.S.C. § 1307(c), which provides the Court may dismiss or convert a chapter 13 case on the request of a party in interest, for "cause." The statute lists eleven enumerated causes, including the following grounds relevant to this case:

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> […]
>
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan[.][4]

The examples of "cause" listed in the statute are not exclusive, and a court may dismiss a case for other causes not listed in the statute, including a debtor's lack of good faith in filing its bankruptcy petition.[5] Dominion, as the party requesting dismissal, bears the burden of proof to establish cause for dismissal.[6]

### A. Unreasonable Delay - § 1307(c)(1)

The focus of § 1307(c)(1) is on whether the debtor has engaged in some form of unreasonable delay during the case and whether the delay has been prejudicial.[7] A common form of "unreasonable delay" is the unjustified failure to file or confirm a plan of reorganization in a timely fashion.[8] This reflects an underlying purpose of § 1307(c)(1), namely, to maintain the careful balance of the rights between debtors and creditors.[9]

---

[4] 11 U.S.C. § 1307(c). Dominion also sought dismissal under § 1307(c)(3), for failure to file a plan timely under section 1321 of this title. However, Bamba filed a timely plan when he filed his chapter 13 petition and filed his first amended plan by the deadline set by the Court. Thus, this section is inapplicable.

[5] *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329-30 (10th Cir. 1993); *Armstrong v. Rushton (In re Armstrong),* 303 B.R. 213, 221 (10th Cir. BAP 2004).

[6] *In re Plese*, 661 B.R. 143, 157 (Bankr. D. Colo. 2024).

[7] *Stevenson v. TND Homes, I, LP (In re Stevenson)*, 583 B.R. 573, 580 (1st Cir. BAP 2018).

[8] *Id.*; *In re Malek*, 591 B.R. 420, 430 (Bankr. N.D. Calif. 2018).

[9] *In re Blanco*, 520 B.R. 479, 483 (Bankr. E.D. Pa. 2014) (citing *In re Wile*, 310 B.R. 514, 517 (Bankr. E.D. Pa. 2004)).

When a Chapter 13 case is filed, the debtor benefits from the automatic stay, which prohibits creditors from exercising their rights.  Because creditors' rights are constrained during the case, the Code contemplates the debtor will promptly confirm a plan so that payments to creditors may commence.[10]  A Chapter 13 debtor largely controls the confirmation process, including filing of the plan, its contents and feasibility, and prosecution and confirmation.[11]  Where a debtor fails to prosecute a plan, the case is essentially put into "legal limbo" with the automatic stay prohibiting creditors from enforcing debts and from being paid.  In contrast, the debtor's post-petition earnings are largely free from creditor claims.[12]  Delays in achieving confirmation cannot be limitless, and a failure to confirm a plan for over a year has been deemed an unreasonable delay prejudicial to creditors.[13]  The longer a case lasts, the greater the burden on a debtor to demonstrate that a reorganization is in progress.  As one court put it, "there is no legitimate purpose for a debtor to remain in chapter 13 and thereby restrain creditors from exercising their rights under applicable non-bankruptcy law, if the debtor, after given fair opportunity to do so, has been unable to propose a chapter 13 plan that meets the [applicable] confirmation requirements."[14]

In this case, Bamba has failed to propose a confirmable plan in the nineteen months this case has been pending.  The initial plan filed by his former counsel on the petition date drew two objections, and the Court denied confirmation when counsel indicated an intent to file an amended plan.[15]  Bamba then sought numerous extensions of time to file an amended plan while he litigated and appealed the allowance of Dominion's claim.  The Court ultimately set a deadline for Bamba to file an amended plan, which he did on June 23, 2025.[16]  That plan, however, did not provide any treatment for Dominion's claim, and omitted many other claims.  It drew objections from Dominion, the Chapter 13 trustee, and the Small Business Administration ("**SBA**").

At a hearing held on August 4, 2025, the Court gave Bamba the option of filing a second amended plan to address the objections, and set a deadline for him to do so but also advised him that he if he failed to file a second amended plan, the Court would hold a scheduling conference to set a final evidentiary hearing on his existing amended plan.[17]  At the time, Bamba indicated he wanted an opportunity to file a further amended plan.  Nevertheless, he chose not to file such a plan by the deadline.  As a result, the

---

[10] *Id*.

[11] *In re Malek*, 591 B.R. 420, 429 (Bankr. N.D. Calif. 2018).

[12] *Id*. at 429-30.

[13] *In re Malek*, 591 B.R. at 430.

[14] *In re Blando*, 520 B.R. at 483.

[15] ECF Nos. 17, 18.

[16] ECF No. 177.

[17] ECF No. 193.

Court held the scheduling conference, at which Bamba failed to appear, and the Court set an evidentiary hearing on confirmation of Bamba's first amended plan and Dominion's Motion to Dismiss for October 16, 2025. Before the October 16th hearing, Bamba filed various pleadings objecting to the hearing going forward and indicating he would not participate "in protest." As he had on numerous previous occasions in motions to stay filed before this Court and the District Court hearing his appeal, Bamba argued that the evidentiary hearing should not go forward because he believes all of his various attempts to invalidate Dominion's claim, including but not limited to his appeal and the adversary proceedings he filed against Dominion, should be fully resolved before the plan process moves forward. His latest attempt to delay, like all those similar requests before, was denied. This Court has explained to Bamba many times that the plan process must proceed and that he should propose a plan that provides for alternative treatments for Dominion's claim, depending on the outcome of his appeal. Bamba has refused to do so.

On the hearing date, Bamba appeared briefly and again reaffirmed he was not going to participate "in protest." The Court advised him on the record that he bore the burden of proof to establish the confirmability of his plan. The Court also cautioned Bamba that if he left the hearing, it would proceed, and the Court would rule based on the evidence received during the hearing. Bamba acknowledged this advisement but chose to leave without presenting evidence in support of his proposed plan or in opposition to Dominion's Motion to Dismiss.[18] The Court then admitted Dominion's proffered evidence, issued an oral ruling denying confirmation, and took the Motion to Dismiss under advisement.

As this Court explained in its oral ruling denying confirmation, Bamba's first amended plan was unconfirmable for multiple reasons. Most glaringly, it failed to provide for any treatment of Dominion's secured claim. Although the Court recognizes Bamba's appeal remains pending, that is not a sufficient reason to wholly ignore Dominion's claim. On this topic, the Court finds *In re Milberg* instructive.[19] In that case, a pro se debtor filed her chapter 13 case on the eve of foreclosure and objected to the secured claim held by her mortgage lender. The debtor's proposed plan did not provide for any payments to the mortgage lender, and she refused to make any plan payments to the trustee. The court in *Milberg* denied confirmation and dismissed the case. In so ruling, the court acknowledged the debtor's pending objection to the creditor's claim but held that the debtor nevertheless had to provide for payment of the secured claim in her plan and make monthly payments on the secured claim pending resolution of the

---

[18] After the hearing, Bamba filed a Hearing Statement for the Record, in which he asserts the Court "excused Debtor from further participation" in the hearing and therefore his departure allegedly "does not constitute waiver, abandonment, or consent to further proceedings." ECF No. 260. As outlined above, the Court did not "excuse" Bamba from attending. Rather, the Court informed Bamba he was free to leave if he so chose but also advised him of the ramifications of non-participation.

[19] 655 B.R. 825 (Bankr. S.D. Fla. 2023).

4

objection.[20] The court rejected the debtor's argument that she could essentially hold her case in abeyance while she disputed proofs of claim filed by creditors:

> This is how it works in chapter 13. Were the process how [debtor] would prefer it, the entire chapter 13 system would come to a screeching halt. Every debtor would be incentivized to file a chapter 13 petition, object to every proof of claim filed, get a free stay of all creditors' collection efforts, and not pay a penny while each and every claim objected to was adjudicated. No, the chapter 13 process – which is quite efficient and provides tremendous benefits to debtors and their creditors – contemplates exactly the opposite. In exchange for the benefits of bankruptcy (including the automatic stay and the opportunity to receive a discharge), a chapter 13 debtor must file a plan and begin making monthly plan payments at the outset. Once that is underway, the debtor may then object to claims. If an objection is resolved in the debtor's favor, the plan can be amended or modified accordingly.[21]

Like the debtor in *Milberg*, Bamba would prefer his case come to a screeching halt while he endlessly litigates with Dominion and other creditors, such as the SBA. While Bamba has been making minimal monthly plan payments to the Chapter 13 trustee during this case, those payments do not in any way address the substantial, secured claim held by Dominion. The Court allowed Bamba to amend his plan to provide for Dominion's claim, but he refused to do so. Bamba cannot reap the benefits of Chapter 13 unless he proposes a plan that provides sufficient payments to his creditors.

Even disregarding Bamba's failure to provide for Dominion's claim, his proposed plan had other problems that made it unconfirmable. As an alternative, if Bamba is correct and Dominion's lien on his home is unenforceable (an outcome the Court views as unlikely), Bamba's equity in the home is his most significant asset. He must account for that asset to meet the best interests of creditors test, which determines whether unsecured creditors would receive more in a chapter 7 case. There are over $1.2 million in unsecured proofs of claim filed in his case. By Bamba's own calculations, there would be over $783,000 in equity available to pay these creditors in a Chapter 7 case. Yet, under his proposed plan, Bamba was paying unsecured creditors only $13,125. Short of selling his house and using the funds to pay unsecured creditors, which Bamba has shown no intention of doing, he cannot meet the best interests of creditors test. In other words, even if he wins his dispute against Dominion, Bamba has failed to demonstrate that he can propose a confirmable Chapter 13 plan.

Bamba has also shown he intends to limit which unsecured creditors will receive payment. In part 3.1 of his plan, he listed total payments of $13,125 to Class 4

---

[20] *In re Milberg*, 655 B.R. at 834 ("Even when a debtor objects to a secured claim, however, no provision of the Bankruptcy Code permits a debtor to withhold making monthly payments pending adjudication of that objection.").

[21] *Id.* at 834-35.

5

unsecured claims, naming only Capital One, Citi, and Partner Colorado as creditors. Not by coincidence, Bamba's original schedules list those three creditors as having claims totaling $13,125.[22] Thus, it appears that Bamba intends to pay only three unsecured creditors in full. This treatment overlooks the eleven other proofs of claim filed by creditors, totaling more than $1.2 million, and amounts to unfair discrimination in violation of § 1322(a)(3). It also demonstrates that Bamba lacks an honest intent to repay most of his unsecured creditors.

Bamba currently has no proposed plan before this Court. He refused to participate in the confirmation hearing on his first amended plan or file a plan that has even the remotest chance of being confirmed. His actions demonstrate he has no intent to file a plan in the future that will meet the Bankruptcy Code's requirements and provide for Dominion's claim and those claims of all unsecured creditors. Meanwhile, he has enjoyed the protection of the automatic stay for nineteen months while making only minimal plan payments to creditors. This amounts to unreasonable delay prejudicial to creditors and is cause for dismissal under § 1307(c)(1).

### B. Denial of Confirmation – § 1307(c)(5)

Another cause for dismissal listed in § 1307(c)(5) is "denial of confirmation of a plan under section 1325 of this title and denial of a request for additional time for filing another plan or modification of a plan."[23] For all the reasons discussed above, Dominion has established cause for dismissal under this subsection as well. The Court denied confirmation of Bamba's first amended plan by oral ruling on October 16, 2025. Bamba previously declined to file an amended plan when given the opportunity. He has refused to participate in confirmation proceedings, and all his actions indicate that he has no intention of filing a confirmable plan. Thus, any further extensions of time to file a plan would be futile.

### C. Lack of Good Faith

Although not listed in § 1307(c), the Tenth Circuit has recognized a debtor's lack of good faith in filing his bankruptcy petition as grounds for dismissal.[24] In determining whether a Chapter 13 petition has been filed in good faith under § 1307(c), the Court must consider the "totality of the circumstances."[25] This test focuses on whether there has been an "abuse of the provisions, purposes, or spirit of [the Bankruptcy Code]."[26]

---

[22] Later amended schedules change these claim amounts to $0.

[23] 11 U.S.C. § 1307(c)(5).

[24] *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329-30 (10th Cir. 1993); *Armstrong v. Rushton (In re Armstrong),* 303 B.R. 213, 221 (10th Cir. BAP 2004).

[25] *In re Gier,* 986 F.2d 1326, 1329.

[26] *Id.* (citing *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992)).

The Tenth Circuit has endorsed the following list of factors when determining if a petition was filed in good faith:

> (1) the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.[27]

The elements do not need to be equally weighted, nor do all need to be present.[28]

The Court's analysis above already touches on these factors. Dominion holds Bamba's most significant single debt. Bamba could discharge his personal liability for this claim in a Chapter 7 case, but Dominion's lien would remain post-discharge. Bamba filed his petition to stop Dominion's foreclosure proceeding. He has used this Chapter 13 case to launch a litany of objections to Dominion's claim, including multiple motions and notices filed in the main bankruptcy case and three adversary proceedings. He also filed a post-petition quiet title action against Dominion in federal district court, repeating the same arguments he has made in this case.[29] Meanwhile, Bamba continues to enjoy the protections of the automatic stay while failing to propose a confirmable plan that offers any payment of Dominion's claim. He has refused to participate in the confirmation process. This prejudices Dominion, which has received no payments from Bamba in over nineteen months and has been forced into protracted litigation over its claim.

Bamba has also demonstrated a lack of honest intent to pay his unsecured creditors. His original schedules, filed with the assistance of his former counsel, listed six unsecured creditors with debts totaling $35,293.[30] Since that date, ten creditors have filed twelve proofs of claim for unsecured claims totaling $1.2 million. Yet, Bamba filed several amended schedules that removed all but three unsecured creditors from his Schedule F, and he now lists those claims as $0.[31] He wholly failed to list a student loan of $205,376, three debts owed to the SBA totaling more than $940,000, and an

---

[27] *Id.* (quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992). The Tenth Circuit has employed a slightly different set of factors when considering lack of good faith in filing a chapter 13 plan under § 1325(a)(3). *See id.* (applying the eleven factors from *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983)); *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012) (noting the good faith analysis has a narrower focus after passage of BAPCPA). Because the Court has already denied confirmation of Bamba's plan on other grounds, it need not consider the *Flygare* factors and will instead focus on the seven factors listed in *Grier*. *See In re Plese*, 661 B.R. 143, 160 (Bankr. D. Colo. 2024). In any event, the factors substantially overlap.

[28] *In re Plese*, 661 B.R. at 160.

[29] Ex. 9.

[30] ECF No. 1, Schedule F.

[31] Ex. 16, ECF No. 175.

7

IRS debt of $45,477.[32] His unconfirmed plan suggested he only had to pay the three creditors listed on his amended schedules, excluding the Department of Education, the SBA, and the IRS. Bamba also objected to the SBA's motion to file late proofs of claim.[33] After the Court granted the SBA's motion, primarily because Bamba wholly failed to give the SBA timely notice of his bankruptcy case, Bamba filed numerous pleadings contesting the SBA's "standing" to participate in the bankruptcy case.[34] All of these actions indicate Bamba seeks to limit and/or delay his unsecured creditors' rights to be paid in this case in a manner that violates the Bankruptcy Code.

Furthermore, the Court does not believe Bamba has been forthcoming about his income. On Schedules I and J, he indicates he is self-employed through his company, Y2Fox, Inc., and lists monthly income of $9,500 and monthly expenses of $6,620, resulting in a net monthly income of $2,880.[35] On Form 122C-1, however, Bamba listed his current monthly income as only $1,333.33, which is below the median income.[36] Bamba did not clarify these inconsistencies, making it impossible to determine whether he is, in fact, a debtor with a below-median income entitled to propose a three-year plan and whether he is paying all disposable income to unsecured creditors as required by § 1325(b). Dominion also presented evidence of pleadings Bamba filed in other cases listing monthly income that is inconsistent with what is listed in his schedules.[37]

Based on the totality of these circumstances, the Court finds sufficient cause for dismissal under § 1307(c) based on Bamba's lack of good faith in filing his petition and his conduct during this case. The Court does not believe Bamba filed his case or his plan with a sincere intent to repay, to the best of his ability, his creditors' claims. Instead, Bamba's case appears to be solely aimed at deferring or avoiding the claims of legitimate creditors, which abuses the purpose and spirit of the Bankruptcy Code.

### D. Dismissal or Conversion

Dominion has established multiple grounds for cause under § 1307(c), all of which show that this case is an abuse of the bankruptcy process. Having found cause, the Court must determine whether the interests of the creditors and the estate are better served by dismissal or conversion to Chapter 7. In making that determination, the views of the parties are entitled to significant weight.[38] Here, the creditors holding the largest

---

[32] *See* Proofs of Claim Nos. 7, 11, 12, 13, 14.

[33] *See* ECF No. 210.

[34] ECF Nos. 197, 204, 206, 252, 256. At the same time, Bamba has not filed formal claim objections to the claims filed by the SBA or any other unsecured creditor. *See* Fed. R. Bankr. P. 3007.

[35] ECF No. 1, Schedules I and J.

[36] ECF No. 5.

[37] Ex. 6, 7, 8.

[38] *In re Nwosu*, 667 B.R. 844, 860 (Bankr. S.D. Ohio 2025).

claims, Dominion and the SBA have requested dismissal rather than conversion.[39] Furthermore, there is no evidence that there would be assets for a Chapter 7 trustee to administer. While Bamba disputes Dominion's lien, it is unlikely a Chapter 7 trustee would challenge Dominion's secured claim. As such, it is doubtful that any home equity would be available for distribution to unsecured creditors. Bamba has scheduled no other significant assets. The Court finds no evidence that dismissal would prejudice any creditors. Conversion, on the other hand, would likely prejudice Dominion by creating further delay. Accordingly, the Court will dismiss this case.

## CONCLUSION

The Court finds that there is sufficient cause to dismiss the case pursuant to 11 U.S.C. § 1307(c)(1) and (c)(5) and for lack of good faith in filing the Chapter 13 petition. Accordingly, Dominion's Motion to Dismiss is GRANTED. The Court will dismiss this case by separate order.

Dated: October 31, 2025

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[39] At the October 16, 2025, evidentiary hearing, counsel for the SBA indicated the SBA supported Dominion's Motion to Dismiss.

9